# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

VICTOR WINEGARDNER,[1] *#311177*,
*#1196002, a/k/a Victor Winegardener,*

Plaintiff

v.                                              Civil Action No. PWG-17-3003

KATHLEEN GREEN, WARDEN,[2]
DAVID ALDERS, Maintenance Supervisor,
MIKE HUNTEMAN, CMO,
ROBERT MARSHALL, CMO,

Defendants

***

## MEMORANDUM OPINION

Self-represented Plaintiff Victor Winegardner is incarcerated at Eastern Correctional Institution (ECI) in Westover, Maryland. On October 12, 2017, he filed an unverified complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants Warden Kathleen Green, Officer David Alders, Officer Mike Hunteman, and Officer Robert Marshall acted with gross negligence and deliberate indifference to his safety. Compl. 3, ECF No. 1. Defendants have filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment, ECF No. 12, along with a

---

[1] Plaintiff's filings, which other inmates typed and handwrote for him, *see* Mot. for Ext. of Time & to Appoint Counsel 1–2, ECF No. 16, use two different spellings of his last name. It is spelled "Winegardener" in the Complaint, his Motion to Proceed in Forma Pauperis, and one Motion for an Extension of Time. ECF Nos. 1, 2, 14. In other submissions, it is spelled "Winegardner." *See, e.g.,* ECF No. 16 (Motion for an Extension of Time and to Appoint Counsel); ECF No. 18 (Motion for an Extension of Time). Plaintiff's prison files consistently spell his name as "Winegardner," *see, e.g.,* Intelligence and Investigative Division (IID) Rep. 1, 14, ECF No. 12-3, as does the Maryland Judiciary case search. http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis. I shall spell Plaintiff's last name "Winegardner," and the Clerk shall to amend the docket accordingly.

[2] The Clerk shall amend the docket to reflect the spelling of Warden Kathleen Green's name as shown in her dispositive motion. ECF No. 12.

Memorandum in Support, ECF No. 12-1, and supporting verified exhibits, ECF Nos. 12-2, 12-3, and declarations, ECF Nos. 12-4 – 12-7. Winegardner was provided an opportunity to file a response and subsequently granted three extensions of time to do so. ECF Nos. 13, 15, 17, 19. The latest deadline has passed without a response. *See* Docket. I find a hearing unnecessary to resolve the issues. *See* Loc. R. 105.6 (D. Md. 2016). Defendants' Motion will be treated as a Motion for Summary Judgment and granted for reasons to follow.

## BACKGROUND[3]

Winegardner worked in the maintenance shop at ECI but had "zero training or experience" in heating, ventilation, and air conditioning ("HVAC"). Compl. 3. On October 15, 2014,[4] he was "told to grab a grease gun" and help Officer Hunteman, who works with HVAC. They went to a mechanical room in an attic area with which Winegardner was not familiar. *Id.*; Incident Rep. 2, ECF No. 12-2. According to Winegardner, Hunteman, who had forgotten his flashlight, "complain[ed] about the burn[t] out lights, and poor visibility" in the mechanical room. Compl. 3. Hunteman instructed Winegardner "to grease the motor attached to a big air handler" and asked him to "check and see if the motor came to a stop." *Id.* Winegardner states:

> I could not hear if the motor was moving or not. Due to the poor lighting, all I could see was the sillouette [sic] of a belt that appear to be stopped. I attempted to tap the belt, and my hand was pulled into the motor.

*Id.* Winegardner gave the same description of the incident in his October 16, 2014 Inmate

---

[3] On a motion for summary judgment, I consider the facts in the light most favorable to Winegardner as the non-moving party, drawing all justifiable inferences in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009). The background includes the undisputed facts, as well as Winegardner's unsupported allegations that Defendants do not dispute.

[4] The Complaint states the incident occurred on October 7, 2014. This appears to be a typographical error since Winegardner's inmate statement, as well as the prison reports in the record indicate the incident took place on October 15, 2014. *See, e.g.*, Incident Rep. 18 (Winegardner statement); IID Rep. 2.

Statement. Inmate Statement, Incident Rep. 18.

When his hand caught in the motor, portions of his index and middle fingers were severed. Compl. 3; Incident Rep. 19–20; Intelligence and Investigative Division ("IID") Rep. 1, 2, 11, ECF No. 12-3. Winegardner claims that he also injured his right thumb, neck, back, and hip as a result of this incident. Compl. 3.

Hunteman's account of the incident differs in one important detail. Specifically, Hunteman states that after Winegardner reported that he could not hear if the motor was moving, he told Winegardner "that's fine we'll take the cover off. Don't put your hands in there," but "seconds later Victor [Winegardner] started screaming and had stuck his fingers in the pully [sic]." Notice of Incident, Incident Rep. 11; Hunteman Decl. ¶ 3, ECF No. 12-7 (stating that he adopts the statements attributed to him in the Serious Incident Report and IID Report). Additionally, Hunteman stated that he "had recently killed the power to both air handlers that [the maintenance workers] were serving." Notice of Incident, Incident Rep. 11.

Inmates Martin Czosnowski, Blain Blackburn, and William Davis were working with Hunteman and Winegardner in the mechanical room at the time of the incident. Incident Rep. 11, 15, 16, 17. Czosnowski's statement of the incident corroborates Hunteman's account.[5] He states that Hunteman told Winegardner "not to put his hand into belt's area until it was completely stop [sic] so we could take off cover. But he had already tried to check belt's [sic] before it was stop [sic]." Incident Rep. 17.

Detective Sergeant William Sage interviewed Winegardner at the ECI infirmary on October 16, 2014 as part of the incident investigation.

---

[5] Davis and Blackburn recovered Winegardner's severed finger parts from the machine. They heard Winegardner scream but do not indicate whether they heard the exchange between Winegardner and Hunteman. Incident Rep. 15, 16.

3

Inmate Winegardner stated he was in the process of greasing the motor of the air handler when CMO Hunteman asked him if the motor had stopped. Inmate Winegardner advised [Sage] that he had put his ear against the air handler to determine if the motor had stopped but was not able to ascertain if it had due to the amount of noise from the actual unit. Therefore, he stated he then reached underneath, near the cover, to touch the bottom of the belts. When asked why he would do this, Inmate Gardner [sic] stated he has done this in the past with belts and pulleys where he would reach up and under and touch the belt from underneath to determine if the belt was still moving. In addition, he stated that it was dark in his location and that he could not observe the light as he did not have a flashlight. According to Inmate Winegardner, the belt would normally just brush over his fingers if it was still running. Inmate Winegardner believes that there were two belts underneath the cover and when he touched one belt, the other had grabbed his right fingers and forced it into the unit causing them to be severed at the index and middle fingers of his right hand at the first joint. Inmate Winegardner stated that he was unable to see because of the lack of light and that he should not have touched the belt without having a flashlight. He further stated that the motor had been shut off earlier but he assumed that it had stopped completely. Inmate Winegardner stated, "*It was my fault. Nobody did it to me. I can't blame Michael (CMO Hunteman) for it. He wasn't pressing me. I'm relentless sometimes. If somebody says do it, I do it. Maybe I'm being too gung ho.*"

IID Rep. 3. Sage's completed IID report recommended no further action be taken. *Id.* at 4.

Winegardner alleges that two years before, Officer K. Glasco was injured in a similar accident; Glasco was a supervisor at the time of Winegardner's accident. Compl. 3. He does not allege, however, that any Defendant was aware of that incident, and he does not name Glasco as a defendant.

Winegardner is suing Defendants in their official and individual capacities. *Id.* He seeks to hold them liable for his injuries because they "were aware of the risk/threat of injury, and did nothing to remedy the situation." *Id.* He claims that "proper safety procedures were not followed such as lock out-tag out" to ensure the machine was properly shut off and not able to start up before completion of the work. *Id.* Winegardner asserts that he "was not trained, and therefore never should have been working with this machine/equipment." *Id.* As relief, he seeks future medical

4

expenses,[6] compensatory damages of $150,000, and punitive damages of $80,000. *Id.* at 4.

## STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Id.* at 247–48. The opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson*, 477 U.S. at 248–49.

The argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id.* "If the evidence is merely colorable or is not significantly probative," summary

---

[6] Winegardner is serving a total sentence of 50 years for drug convictions. His release date is September 6, 2041. IID Rep. 4, 14.

5

judgment is appropriate. *Id.* at 249–50 (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt [the moving party's] version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Defendants argue that they are entitled to summary judgment on several grounds including Winegardner's failure to exhaust administrative remedies, Eleventh Amendment immunity, because all but Hunteman were supervisors not directly involved in the incident, and because Winegardner's allegations fail to support a constitutional claim.

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at 1856 (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting

administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624–25 (D. Md. 2015) (internal citation omitted).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The *Ross* Court explained that an administrative remedy is available for purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when (1) the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so "opaque" as to become "practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Defendants argue that Winegardner has not properly presented his claims through the administrative remedy procedure, and therefore the claims must be dismissed pursuant to the PLRA. Winegardner concedes he did not present his claims through the administrative remedy procedure process. Compl. 2. And, he does not assert that Defendants or other corrections officials

thwarted his access to the ARP process; nor does he characterize the ECI ARP process as a "simple dead end," unduly complicated, or otherwise "unavailable" as outlined in *Ross*. 136 S. Ct. at 1859. But, he explains that he was "unable to write due to injury" to his "writing hand" and because he was "heavily medicated due to injury sustained." Compl. 2.

Defendants counter that Winegardner failed to pursue his administrative remedies once his injury was sufficiently healed to allow him to prepare an ARP grievance. Defs.' Mem. 8-9. Further, Defendants assert—and Winegardner does not dispute—that Winegardner wrote and signed his inmate statement about the incident on October 16, 2014, one day after it happened. *Id.*; *see also* Incident Rep. 18.

The severity of Winegardner's injury to his right hand is clear and undisputed. Certainly, the record also shows that Winegardner returned to ECI from the hospital on the same day of the accident, and Winegardner appears to have written and signed an inmate statement the next day. And, he does not explain how his medication kept him from obtaining assistance to submit a timely ARP request. Nonetheless, given the severity of his physical injuries and the time constraints for filing an ARP, the administrative remedy arguably was not "capable of use." *See Ross*, 136 S. Ct. at 1859; *Booth*, 532 U.S. at 738. Regardless whether Winegardner exhausted his remedies, Defendants are entitled to summary judgment on the alternative grounds they identified, as discussed below.

### Official Capacity

Defendants assert they "are immune under the Eleventh Amendment from suit in federal court for any claims brought against them in their official capacity." Defs.' Mem. 16. Even though this "argument would appear to implicate this Court's jurisdiction," the Court first must consider whether any Defendant in his or her official capacity is "a 'person' within the meaning of § 1983."

8

*Lawson v. Green*, No. TDC-16-2946, 2017 WL 3638431, at *4 (D. Md. Aug. 23, 2017) (parenthetical omitted) (citing *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 779 (2000); *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000)); 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring dismissal of claim filed by prisoner proceeding *in forma pauperis* if it fails to state a claim); *see also* Order, ECF No. 7 (granting Winegardner leave to proceed *in forma pauperis*).

To state a claim under § 1983, a plaintiff must name a defendant who qualifies as a "person" for purposes of § 1983. *See Bixler v. Harris*, No. WDQ-12-1650, 2013 WL 2422892, at *5 (D. Md. June 3, 2013) ("Section 1983 provides a remedy against any *person* who, acting under color of law, deprives another of constitutional rights." (emphasis added) (citing 42 U.S.C. § 1983)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A state is not "a 'person' within the meaning of 42 U.S.C. § 1983." *Kelly v. Bishop*, No. RDB-16-3668, 2017 WL 2506169, at *4 (D. Md. June 9, 2017) (citing *Will*, 491 U.S. at 64–65 & 70–71). Therefore, a State official in his official capacity is not subject to a § 1983 action. *See Will*, 491 U.S. at 64–65 & 70–71. Defendants were State employees during the time period at issue, and thus, Winegardner cannot state a claim against them in their official capacities under § 1983. *See id.* Accordingly, I will dismiss all claims against them in their official capacities.

### Claims against Officers Alders and Marshall and Warden Green in their Individual Capacities

Liability is imposed under § 1983 on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights . . . ." 42 U.S.C. § 1983. An individual cannot be held liable under § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at

690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Rather, the statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

In a § 1983 action, liability of supervisory officials "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan*, 737 F.2d at 372). Supervisory liability under § 1983 must be supported with evidence:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Winegardner does not allege that Officer Alders, Warden Green or Officer Marshall was personally involved in this incident. He names Officer Alders and Warden Green as Defendants in the caption of his Complaint but otherwise does not mention them. As for Marshall, Winegardner only alleges that Marshall was his supervisor and a locksmith, and that they were sitting together on the morning of the incident. To the extent Winegardner intends to prevail against these Defendants based on supervisory liability, he does not make allegations to support such a claim. Accordingly, Alders, Green and Marshall are entitled to summary judgment on the claims against them in their individual capacities.

## Claim against Officer Hunteman in his Individual Capacity

To proceed under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Claims of failure to protect and deliberate indifference are examined in light of the Eighth Amendment, which prohibits "cruel and unusual punishments," such as those involving the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 832). Those duties include taking 'reasonable measures to guarantee the safety of the inmates.'" *Id.* Nonetheless, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.; see also Rich v. Bruce*, 129 F.3d 336, 339–40 (4th Cir. 1997). Mere negligence is not enough. *Grayson v. Peed*, 195 F.3d 692, 695 (4th. Cir. 1999). A defendant's "failure to alleviate a significant risk that he should have perceived, but did not" will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 838. Further, a defendant's violation of official duties will not support an Eighth Amendment claim unless the defendant appreciated that his action created an excessive risk to the inmate's safety. *Danser v. Stansberry*, 772 F.3d 340, 348 (4th Cir. 2014).

Eighth Amendment protections have been extended to prison work assignments. *Kulkay v Roy*, 847 F.3d 637, 642 (8th 2017) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)); *Littlejohn v. Moody*, 381 F. Supp. 2d 507, 513 (E.D. Va. 2005). "In the prison work assignment

context, prison officials are deliberately indifferent when they knowingly compel 'an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful.'" *Kulkay*, 847 F.3d at 643(citing *Ambrose v. Young*, 474 F.3d 1070, 1077) (8th Cir. 2007).

Winegardner argues that the conditions that led to his injury were (1) he had no HVAC training, (2) the mechanical room was dark, and (3) "proper safety procedures were not followed such as lock out-tag out." Compl. 3. Assuming arguendo that these conditions establish that there was an objective risk of serious harm, Winegardner has not shown, or even alleged, that Hunteman appreciated this risk and acted with deliberate indifference to his safety. Rather, Winegardner alleges that Hunteman complained about the lack of visibility in the mechanical room and summarily asserts that Defendants "were aware of the risk/threat of injury, and did nothing to remedy the situation." Compl. 3. Yet Winegardner does not allege that Hunteman realized the safety risk posed by the dark mechanical room and willfully disregarded the danger. Certainly, Winegardner alleges that Officer Glasco was injured in a similar accident two years before, but he does not assert that Hunteman knew of that accident or its details.

Importantly, Winegardner's own statements in the record contradict his vague and conclusory allegations of deliberate indifference. He told the IID investigator: "It was my fault. Nobody did it to me. I can't blame Michael (CMO Hunteman) for it. He wasn't pressing me. I am relentless sometimes." IID Rep. 3. Further, Hunteman states that he instructed Winegardner to check to see if the machine had stopped and then, when Winegardner said that he could not see if it was running, he instructed: "that's fine we'll take the cover off. Don't put your hands in there," an account which Inmate Czosnowski corroborated. Incident Rep. 11, 16. And, Hunteman stated that he "had recently killed the power to both air handlers that [the maintenance workers] were serving," Notice of Incident, Incident Rep. 11, which suggests an effort to minimize danger, not a

12

willful disregard.

Even when the facts are viewed in the light most favorable to him, Winegardner's allegations fall far short of showing Hunteman acted with constitutionally required deliberate indifference to his safety. Accordingly, I shall grant summary judgment in favor of Hunteman. To the extent Winegardner intends to raise a claim of negligence premised on state law, I decline to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For these reasons, I will grant Defendants' Motion for Summary Judgment by separate Order.

_____
Date

_____ 2/26/2019
Paul W. Grimm
United States District Judge